FILED

2022 Mar-31  PM 01:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **COLIN BROWN, individually, and on behalf of all other similarly situated consumers,** | } } } } | |
| **Plaintiff,** | } } | **Case No.:  2:19-cv-00705-MHH** |
| **v.** | } } | |
| **SMITH, ROUCHON & ASSOCIATES, INC.,** | } } } | |
| **Defendant.** | | |

## **MEMORANDUM OPINION**

Colin Brown filed this putative class action against Smith, Rouchon & Associates (SRA) after receiving a collection letter regarding a personal medical debt.  Mr. Brown alleges that the contents of the letter violated 15 U.S.C. §§ 1692e, e(10), and 1692g(b) of the Fair Debt Collection Practices Act.  (Doc. 1).  SRA moved for judgment on the pleadings, or, alternatively, for summary judgment.  (Doc. 8).  After reviewing the motion, the Court deemed it a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 10).

The Court reviewed the parties' extensive briefing on the motion and concluded that under 15 U.S.C. § 1692g(b), Mr. Brown "adequately alleged a violation of § 1692g(b) because [SRA's] letter seems to offer a consumer only two

1

options – payment or a statement of reasons why the debt is incorrect, which is inconsistent with the validation notice in § 1692g(a) and the requirement of § 1692g(b) that a debt collector, upon receipt of a written request from a consumer, mail to the consumer verification of the debt without first requiring the consumer to state in [a] written request why he believes the debt, or part of the debt, is invalid." (Doc. 36, pp. 9–10).  Mr. Brown also adequately alleged a violation of 15 U.S.C. § 1692e because the language in SRA's letter that "calls for a statement of reasons why the debt is invalid is misleading in that it suggests to a consumer that he must explain why a debt is invalid before he receives from the debt collector in the mail verification of the debt.  A consumer has no such obligation under the FDCPA." (Doc. 36, p. 10).  Accordingly, the Court denied SRA's motion to dismiss.  (Doc. 36, p. 10).

SRA moved again to dismiss, or, alternatively, for the Court to reconsider, arguing that Mr. Brown lacked Article III standing.  (Doc. 44).  In its motion, SRA cited *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020).  SRA argued that in *Trichell*, the Eleventh Circuit overruled *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990 (11th Cir. 2016), and concluded that a plaintiff must suffer an injury to have standing to sue under the FDCPA.  (Doc. 44, pp. 2–3).  In response, Mr. Brown filed an amended complaint.  (Docs. 66, 70).

SRA now has moved to dismiss Mr. Brown's amended complaint under Federal Rules of Civil Procedure 12(b)(1) (standing) and 12(b)(6) (failure to state a claim), or, alternatively, for summary judgment under Rule 56.  (Doc. 71).  Mr. Brown also has asked the Court to consider intervening authority in *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir. 2021),[1] and *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937 (11th Cir. 2021).  (Doc. 79).

To resolve these motions, the Court first identifies the relevant allegations in Mr. Brown's amended complaint.  Then the Court reviews the standards that apply to SRA's alternative motions and evaluates Mr. Brown's amended complaint under those standards.

## I.

In his amended complaint, Mr. Brown alleges that in October 2018, SRA sent him a "dunning letter" which states:  "The purpose of this notice is [to] give you an opportunity to respond to the described debt claim and make arrangements to either pay it or state your reasons why it may be incorrect."  (Doc. 70, p. 2, ¶¶ 8–9).  The letter contains a mandatory validation notice:

> Unless you notice [sic] this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in

---

[1] The *Hunstein* opinion was vacated by *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1016 (11th Cir. 2021), which in turn was vacated by *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 17 F.4th 1103 (11th Cir. 2021).  The Eleventh Circuit has voted to rehear the case *en banc*.

writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Doc. 70, p. 2, ¶ 10).

Mr. Brown alleges that "[t]his language demands more than a simple dispute that the FDCPA requires" and improperly shifts the burden from the debt collector to the consumer to state why the debt is incorrect.  (Doc. 70, p. 2, ¶¶ 11–12).  According to Mr. Brown, this language "overshadows and is inconsistent with the validation notice in violation of the FDCPA."  (Doc. 70, p. 3, ¶ 13).  Mr. Brown alleges that after he reviewed SRA's letter, he "misunderstood his right to dispute the debt as imposing an affirmative obligation upon him as to why the debt was not legitimate."  (Doc. 70, p. 3, ¶ 14).  "Therefore, unable to establish evidence that the debt was not owing, [Mr. Brown] did not dispute the debt until after employing a credit advisor for assistance concerning his dispute rights."  (Doc. 70, p. 3, ¶ 14).

In its current motion, SRA challenges Mr. Brown's assertion that he had to hire a credit advisor to help him understand the confusing letter and dispute the debt.  In other words, SRA challenges the allegation that Mr. Brown added to his initial complaint to establish Article III injury.  (Doc. 71, pp. 1–2, ¶ 2).  SRA asserts that the "entire suit rests [on] Brown's professed confusion about his rights to dispute a

debt when we all know in truth he was never confused." (Doc. 72, p. 9). According to SRA, because Mr. Brown was not confused about his right to dispute the debt, he did not need to hire a consultant to educate him about his rights, and therefore the expense of hiring the consultant cannot be considered injury for purposes of standing. (Doc. 72, p. 21).[2]

## II.

"Under Article III of the Constitution, the jurisdiction of a federal court is limited to 'cases' and 'controversies.'" *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (citing *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1124 (11th Cir. 2019)). "To satisfy the 'case' or 'controversy' requirement, a plaintiff in a matter must have standing to sue." *Tsao*, 986 F.3d at 1337 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016)). To have standing, a plaintiff must establish: "(1) an injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is redressable by a favorable decision." *Laufer v. Arpan LLC*, No. 20-14846, -- F.4th --, 2022 WL 906511, at *2 (11th Cir. Mar. 29, 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "A plaintiff at the pleading stage, as the party invoking federal jurisdiction, bears the burden of establishing

---

[2] SRA also argues that Mr. Brown's claim under the FDCPA is moot because SRA validated and verified the debt as required by the FDCPA. (Doc. 72, pp. 4–5). This argument overlooks the fact that Mr. Brown's alleged injury is that he was confused by the collection letter and retained a consultant to advise him of his rights. The fact that SRA ultimately validated the debt does not redress the fee that Mr. Brown allegedly spent to hire a consultant.

these elements by alleging facts that 'plausibly' demonstrate each element." *Tsao*, 986 F.3d at 1337 (quoting *Trichell*, 964 F.3d at 996).

Of the standing elements, SRA argues only that Mr. Brown fails to allege an injury. (Doc. 72, p. 2). "At the pleading stage, 'general factual allegations of injury' are enough." *Tsao*, 986 F.3d at 1337 (quoting *Lujan*, 504 U.S. at 561). "But this does not mean that *any* allegations of injury can push a plaintiff across the standing threshold. Rather, a plaintiff must set forth general factual allegations that 'plausibly and clearly allege a concrete injury,' and that injury must be 'actual or imminent, not conjectural or hypothetical.'" *Tsao*, 986 F.3d at 1337–38 (internal citations omitted) (emphasis in *Tsao*).[3] Tangible injuries—such as "straightforward economic injuries"—generally are concrete. *Tsao*, 986 F.3d at 1338; *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 926 (11th Cir. 2020) ("Tangible harms are the most obvious and easiest to understand; physical injury or financial loss come to mind as examples."). The Eleventh Circuit has noted that concrete tangible injury in the context of the FDCPA and debt collection letters may include making "payments in response to the defendants' letters—or even [wasting] time or money in determining whether to do so." *Trichell*, 964 F.3d at 997. On its face, Mr. Brown's allegation that he was confused by the debt collection letter and

---

[3] An injury must also be particularized, which means that it "affect[s] the plaintiff in a personal and individual way." *Laufer*, 2022 WL 906511, at *2 (quoting *Lujan*, 504 U.S. at 560 n.1).

retained a credit advisor for assistance constitutes a concrete and particularized injury for Article III standing.  For this reason, the Court denies SRA's Rule 12(b)(6) motion to dismiss because for a 12(b)(6) motion, the Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012)).

## III.

"In general, if it considers materials outside of the complaint, a district court must convert [a] motion to dismiss into a summary judgment motion," *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citing FED. R. CIV. P. 12(b)), but a district court "may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged," *SFM Holdings*, 600 F.3d at 1337 (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).

SRA asks the Court to consider several pieces of extrinsic evidence outside of the complaint:  "audio recordings of two phone calls . . . which Plaintiff placed to SRA in response to the [] collection letter"; "the written contract signed by the Plaintiff giving rise to the . . . debt"; "documentary proof SRA timely 'validated' and 'verified' the . . . debt[]"; "Embolden Solutions, LLC's Alabama corporate registration identifying 'Colin Brown' as the registered agent"; "a copy of [a short]

YouTube video [allegedly] uploaded by Mr. Brown entitled 'Embolden Solutions LLC Credit Repair Welcome'"; and "screen captures of Embolden Solutions LLC's website . . . ." (Doc. 72, pp. 4–6).[4]

The evidence most relevant to the question of Article III injury is the audio recordings of two phone calls which Mr. Brown placed to SRA. Though the authenticity of the recordings is not contested, the recordings are not central to Mr. Brown's claim in the amended complaint which centers on whether the collection letter sent to Mr. Brown violated certain provisions of the FDCPA. Therefore, the Court cannot consider the evidence in conjunction with SRA's Rule 12(b)(6) motion. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) ("[T]he district court could not have considered Appellees' motion under Rule 12(b)(6), because in rendering its decision the court relied on extrinsic evidence outside the pleadings. . . . The more germane question is whether the district court should have reviewed the motion under Rule 56 instead of Rule 12(b)(1)." (internal citations omitted)). But

---

[4] Exhibits A, B, C, and D—the recordings, validation, and contract—were submitted with a supporting affidavit in the motion to dismiss or for summary judgment filed prior to Mr. Brown's amended complaint. (Doc. 56). Exhibits E, F, and G—the entity registration, YouTube video, and website screenshots—were submitted without an affidavit in the pending motion to dismiss or for summary judgment. (Doc. 71). Mr. Brown argues that Exhibits E, F, and G are unauthenticated hearsay. (Doc. 75, p. 10). The Court does not need to consider these documents to resolve the motion; Mr. Brown acknowledges that he started Embolden Solutions, LLC in January 2017 and that the "company focuses on credit repair and sending disputes to Credit Reporting Agencies." (Doc. 84, p. 1, ¶¶ 2–3).

the Court may consider the evidence when evaluating SRA's Rule 12(b)(1) and Rule 56 motions.

The distinction between Rule 12(b)(1) and Rule 56 is important because the standards differ significantly.  With its evidence, SRA challenges the credibility of Mr. Brown's injury allegation.  (*See* Doc. 71, pp. 1–2, ¶ 2 ("Plaintiff had already disputed the debt before allegedly hiring his credit advisor."); Doc. 78, pp. 8–9, 12 ("Plaintiff's claim he needed a credit advisor to help him dispute a debt he already disputed . . . is simply not true . . . . Plaintiff is alleging that he had an actual, existing confusion about his rights under the FDCPA.  But he is not being honest.")).  The Eleventh Circuit has explained:

> Attacks on subject matter jurisdiction, which are governed by Rule 12(b)(1), come in two forms: facial or factual attack. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A "facial attack" challenges whether a plaintiff "has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529 (quotation marks omitted). A "factual attack," in contrast, challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered. *Id.* A district court evaluating a factual attack on subject matter jurisdiction "may proceed as it never could" at summary judgment and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quotation marks omitted).

*Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021).  If the Court construes SRA's factual attack on subject matter jurisdiction under Rule 12(b)(1), the Court may "make credibility determinations and weigh the evidence."  *Kennedy*,

998 F.3d at 1232 (citing *Lawrence*, 919 F.2d at 1529).  On the other hand, a district court:

> should only grant summary judgment under Rule 56 where the record evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a Rule 56 motion, the district court may not weigh the evidence or find facts. Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*Morrison*, 323 F.3d at 924.  Under Rule 56, the Court must view the evidence in the light most favorable to Mr. Brown and leave credibility decisions for a factfinder if Mr. Brown's claim survives SRA's summary judgment motion.

A district court may "rely on the Rule 12(b)(1) standard when addressing a jurisdictional challenge that does not implicate the merits of a plaintiff's cause of action," but when standing is "inextricably intertwined" with the merits of a claim, "the proper course [is] for the district court to find that jurisdiction exists and deal with [the] motion as a direct attack on the merits of [the] case." *Kennedy*, 998 F.3d at 1230 (citing *Morrison*, 323 F.3d at 925).

> This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) . . . or Rule 56 . . . both of which place great restrictions on the district court's discretion. . . .

*Morrison*, 323 F.3d at 925 (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).  Therefore, if SRA's motion on Article III standing implicates the merits of Mr. Brown's FDCPA claim, the Court must construe the motion under Rule 56 and apply the summary judgment standard.

"[J]urisdiction becomes intertwined with the merits of a cause of action when 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.'"  *Morrison*, 323 F.3d at 926 (quoting *Garcia*, 104 F.3d at 1262).  *Morrison* and *Garcia* addressed employee and employer status under the FMLA and ADEA, respectively.  The statutes had separate sections in which employee/employer was a threshold jurisdictional question and an element of a *prima facie* case.  As a result, the district court had to evaluate evidence of injury under Rule 56, not Rule 12(b)(1).  *See Morrison*, 323 F.3d at 927–28 ("The question of 'eligible employee' status implicates both jurisdiction and the merits, and is properly reserved for the finder of fact."); *Garcia*, 104 F.3d at 1266 ("Having determined that the motion to dismiss for lack of subject matter jurisdiction involved a 'factual' attack and the determination of whether [the defendant] is an 'employer' under ADEA provides the basis for both subject matter jurisdiction and the substantive claim for relief, the summary judgment standard must be applied, unless plaintiff's claim was clearly immaterial or insubstantial.").

On the other hand, in *Kennedy*, the Eleventh Circuit found that a district court correctly proceeded under Rule 12(b)(1). *Kennedy*, 998 F.3d at 1230. The plaintiff asserted an ADA claim; the jurisdictional challenge was to Article III standing for injunctive relief which required a showing of real and immediate future injury. *Kennedy*, 998 F.3d at 1230–31. No party contended that the ADA "was inapplicable," and there was not a "real dispute as to whether [the plaintiff's] complaint state[d] a prima facie claim for a violation of the ADA." *Kennedy*, 998 F.3d at 1231. Therefore, the issue of Article III standing to pursue injunctive relief was distinct from cases like *Morrison*. "[S]tanding to pursue injunctive relief— unlike, say, whether a defendant company qualifies as an 'employer' under a particular statute—has nothing to do with whether [the defendant] is subject to the ADA or has violated it." *Kennedy*, 998 F.3d at 1231. The Eleventh Circuit found that, even though injunctive relief was the only remedy available under the statute, and the plaintiff had to demonstrate a real and immediate threat of future injury to prevail on the ADA claim, the standing inquiry was not a merits determination. *Kennedy*, 998 F.3d at 1231.

SRA makes two factual attacks on Mr. Brown's allegation of injury in the first amended complaint. First, SRA contends that it is "untrue" that "Plaintiff did not dispute the debt until after employing a credit advisor for assistance regarding his dispute rights." (Doc. 71, p. 1, ¶ 2) (emphasis in SRA's motion). SRA argues that

Mr. Brown "already disputed the debt before allegedly hiring his credit advisor" because he made an October 11, 2018 phone call to SRA to "dispute the debt *before* he called SRA with his advisor" on October 15, 2018.  (Doc. 71, p. 2, ¶ 2; Doc. 72, p. 9) (emphasis in SRA's motion).  Second, SRA contends that Mr. Brown was not genuinely confused by the collection letter and did not need to hire an advisor, so any potential injury was self-inflicted.

SRA's first attack on the timing of when Mr. Brown retained his advisor may be evaluated under Rule 12(b)(1) because it does not implicate the merits of Mr. Brown's FDCPA claim.  Whether Mr. Brown retained an advisor for assistance before or after disputing the debt is a fact-specific inquiry separate from whether SRA's collection letter was misleading, § 1692e(10), or overshadowed the disclosure of Mr. Brown's right to dispute the debt, § 1692g(b).  Assuming that Mr. Brown adequately disputed the debt through his calls to SRA, there is no evidence in the record as to when Mr. Brown hired his credit advisor.[5]  The fact that the

---

[5] Technically, as SRA pointed out in Doc. 9, pp. 6–7, § 1692g(b) requires a consumer to dispute a debt in writing. 15 U.S.C. § 1692g(b) ("If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, . . . and a copy of such verification or judgment, . . . is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed . . . . Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . ."). In *Bishop v. Ross Earle & Bonan, P.A.*, the Eleventh Circuit held that debt collectors may not omit the "in writing" requirement in § 1692g and mentioned that under § 1692g(b), "the consumer has a right to verification only if she

advisor was not on the line for Mr. Brown's first call on October 11, 2018 is not proof that Mr. Brown had not already consulted or hired the advisor. Mr. Brown has not alleged, and SRA has not offered evidence to establish, the date Mr. Brown retained his advisor, the time he spent locating the advisor, the cost of hiring the advisor, or even the advisor's full name.

When ruling on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, a district court may "devise a method for making a determination with regard to the jurisdictional issue." *Kennedy*, 998 F.3d at 1232 (quoting *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1170 (11th Cir. 2011)). "In making that determination, the district court may conduct an evidentiary hearing, *see Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1237–38 (11th Cir. 2002), and make its own factual findings, including about the credibility of [the plaintiff's] testimony, *see, e.g.*, *United States v. Trull*, 581 F.2d 551, 552 (5th Cir. 1978)." *Laufer*, 2022 WL 906511, at *5. By separate order, the Court will schedule an evidentiary hearing

---

disputes the debt in writing." 817 F.3d 1268, 1274 (11th Cir. 2016) (citing *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 286 (2d Cir. 2013)).

There is no evidence in the record to suggest that Mr. Brown disputed his debt in writing. The fact that SRA voluntarily verified Mr. Brown's debt after he orally disputed his debt by phone, (Doc. 56-1, pp. 6–7), may indicate that Mr. Brown successfully disputed the debt despite not complying with the statute, but there is no question that Mr. Brown "did not dispute the debt until after employing a credit advisor for assistance concerning his dispute rights" if a writing was required, and that writing has yet to materialize. At the upcoming evidentiary hearing in this case, the parties should be prepared to address this issue.

to explore the factual issues relating to the details of Mr. Brown's relationship with his financial advisor.

In contrast, SRA's second challenge to subject matter jurisdiction concerns Mr. Brown's sophistication and the credibility of his contention that he needed assistance to contest his debt. This argument implicates the substance of Mr. Brown's claim under 15 U.S.C. § 1692e. That section states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," and § 1692e(10) specifically prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e. "When evaluating a communication under § 1692e, we ask whether the 'least sophisticated consumer' would be deceived or misled by the communication at issue." *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1274 (11th Cir. 2016) (citing *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1306 (11th Cir. 2015)). And § 1692g(b) states that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . ." 15 U.S.C. § 1692g(b).

Deciding whether Mr. Brown was subjectively misled by the collection letter treads the same ground as deciding whether the least sophisticated consumer would be misled by the collection letter and therefore "whether [Mr. Brown's amended]

complaint states a prima facie claim for a violation of the [FDCPA]." *See Kennedy*, 998 F.3d at 1231.   Mr. Brown has facially alleged Article III standing, and conducting a Rule 12(b)(1) credibility analysis of whether he was actually confused by the collection letter would significantly overlap with the merits analysis of whether the letter was misleading and whether its language overshadowed the disclosure of Mr. Brown's right to dispute the debt.   Because this jurisdictional challenge implicates the merits of the FDCPA claim, the Court applies the Rule 56 standard to evaluate this aspect of SRA's motion.[6]

## IV.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   To demonstrate that a genuine dispute as to a material fact precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

---

[6] The Court acknowledges that an Article III challenge to injury typically does not implicate the merits of a plaintiff's claim.  *See Gardner v. Mutz*, 962 F.3d 1329, 1340 (11th Cir. 2020) (noting that the Supreme Court has distinguished "statutory-standing cases, in which the merits and jurisdictional inquiries may 'overlap,' from Article-III-standing cases, in which the jurisdictional question typically 'has nothing to do with the text of [a] statute'") (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998)).  The Court has carefully considered the issue and concludes that the issue of Mr. Brown's need for assistance is inextricably intertwined with the substantive merits of his FDCPA claim.

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018); *see also Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) ("To be sure, Feliciano's sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage."). Even if a district court doubts the veracity of certain evidence, the court cannot make credibility determinations; that is the work of jurors. *Feliciano*, 707 F.3d at 1252 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). Accordingly, the Court views the evidence in the light most favorable to Mr. Brown and draws all reasonable inferences from the evidence in his favor.

SRA points to several pieces of evidence that purportedly establish that Mr. Brown was not genuinely confused by the collection letter. SRA points out that Mr.

Brown's company, Embolden Solutions, LLC, "focuses on credit repair and sending disputes to Credit Reporting Agencies," which "involves knowledge of the Fair Credit Reporting Act." (Doc. 84, p. 1, §§ 2–3, 5). According to SRA, Mr. Brown's expertise in this area indicates that he was not confused regarding his rights under the FDCPA and did not need to hire a consultant. SRA also has submitted two audio recordings of phone calls between Mr. Brown and SRA that, from SRA's perspective, indicate that Mr. Brown was not confused by the collection letter.

On October 11, 2018, Mr. Brown called SRA regarding his debt. The call lasted less than five minutes. Mr. Brown acknowledged receiving a collection letter from SRA, and stated: "So we need to look into this." Upon hearing the amount of the debt and the date of service, Mr. Brown asserted that SRA could not collect a debt that was four years old and that he did not owe the debt anyway. Mr. Brown stated: "Since this has been within 30 days, I'm gonna need all the proper paperwork to prove that this is mine pursuant to Section 809 of the FDCPA." The employee on the line tried to transfer the call to the manager, but the manager was busy on another line. The employee offered to have the manager pull the itemized statements and mail them to Mr. Brown. Mr. Brown replied, "Yeah, you have to. Absolutely." Mr. Brown decided to call back to speak to the manager.

Four days later, on October 15, 2018, Mr. Brown called SRA again to speak with the manager. For this phone call, his consultant "Ken" was on the line. Mr.

18

Brown referenced his debt and stated:  "I have a few questions about it because this so-called [debt] took place like four, five years ago so I have my credit counselor, he's my advisor, he's on the phone now, and I authorize you to talk to him because he has a few questions."  Ken took over the call on Mr. Brown's behalf and stated: "We're trying to figure out what's going on with the account that you guys have that you're saying that he allegedly owe[s] your company."  When the manager offered to mail Mr. Brown the itemization for the debt, Ken asserted:  "Well, even if you mail the itemization, what we're trying to get some clarity on is to see what's owed to you."  Ken asked if SRA owned the account.  When he learned that SRA is a third-party collection service, he asked to see the agreement authorizing SRA to collect the debt.  Ken mistakenly believed that a federal statute gave Mr. Brown the right to see SRA's authorization agreement, and he believed that as a third party, SRA may not have grounds to collect the debt.  The call became contentious, and when the manager again offered to send the itemization, Ken stated:  "We don't care a thing about itemization right now, if you want to send it just send it."  The call concluded soon after.

Thus, to establish that Mr. Brown was not genuinely confused by the collection letter and did not need to hire an advisor, SRA cites Mr. Brown's expertise with the Fair Credit Reporting Act (FCRA), Mr. Brown's first call to SRA to dispute his debt, and Mr. Brown's specific mention of Section 809 of the FDCPA and its 30-

19

day time period on the call.  To dispute this evidence, Mr. Brown submitted a signed affidavit in which he states:  "I was confused by Defendant's letter," and "I obtained a credit advisor to help me with disputing this debt because I was unsure about my ability to dispute given the language in the letter and the advisor had more knowledge regarding the FDCPA and my dispute rights."  (Doc. 84, p. 1, ¶¶ 6–7).[7] Though conclusory, Mr. Brown's affidavit is sufficient to create a genuine issue of fact.  *See Sconiers*, 946 F.3d at 1263 (establishing that on a motion for summary judgment, "when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible"); *Feliciano*, 707 F.3d at 1253 ("[A] plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature.").

Viewing the evidence in the light most favorable to Mr. Brown, his affidavit is not blatantly contradicted by the record.  Knowledge of the FCRA does not equate with knowledge of the FDCPA, and Mr. Brown indicated that his company "did not start sending disputes to debt collectors for clients until 2020."  (Doc. 84, p. 1, ¶ 4). Moreover, the fact that Mr. Brown called SRA to dispute the debt does not mean

---

[7] The Court allowed Mr. Brown the opportunity to resubmit his affidavit to ensure it met the requirements of 28 U.S.C. § 1746.  (Doc. 83).

that he was not confused by the language in the collection letter. Mr. Brown contends that the language in the collection letter stating that "[t]he purpose of this notice is [to] give you an opportunity to respond to the described debt claim and make arrangements to either pay it or state your reasons why it may be incorrect" is misleading and overshadows the disclosure of his right to dispute the debt because it implies that "a consumer may not dispute the debt without having adequate reason." (Doc. 70, pp. 2–3, ¶¶ 9, 12). Mr. Brown allegedly "misunderstood his right to dispute the debt as imposing an affirmative obligation upon him as to why the debt was not legitimate." (Doc. 70, p. 3, ¶ 14). For this reason, Mr. Brown hired a credit advisor for assistance before disputing the debt. (Doc. 70, p. 3, ¶ 14).

Mr. Brown alleges that he was misled by the collection letter because he believed that he was required to provide reasons for why his debt was not legitimate when under the FDCPA, he could have simply written "I dispute the debt" to suspend collection activities. The audio recordings of his phone calls to SRA do not contradict his assertion. In the October 11, 2018 phone call, Mr. Brown contested the debt by asserting that it occurred four years prior and was too old to be collected, and Mr. Brown disputed the debt by contending that he did not owe it at all. Mr. Brown did not seem to understand that he did not have to offer specific reasons for his challenge. In the October 15, 2018 phone call, Ken mistakenly focused on the fact that SRA is a third party collection service supposedly unauthorized to collect

the debt.  Under the FDCPA, none of this information was required to contest the debt and suspend collection activities.[8]

Finally, Mr. Brown's statement:  "Since this has been within 30 days, I'm gonna need all the proper paperwork to prove that this is mine pursuant to Section 809 of the FDCPA," does indicate that he was familiar with the FDCPA.  But again, the evidence does not show when Mr. Brown acquired this knowledge or whether he obtained the information from his advisor.  Moreover, the statement does not conclusively establish that Mr. Brown understood his right to dispute the debt without an adequate reason, especially in light of his affidavit to the contrary.[9] Therefore, a genuine dispute of fact exists as to whether Mr. Brown was confused by the collection letter such that he needed to consult an advisor, and Mr. Brown's assertion of Article III injury stands for now as it relates to the credibility of his assertion of confusion.

## V.

For the reasons stated above, by separate order, pursuant to Rule 12(b)(1), the Court will set an evidentiary hearing to examine Mr. Brown's allegation that he "did

---

[8] Whether Mr. Brown's reasons for disputing the debt are valid is not relevant.  *See DeSantis v. Computer Credit, Inc.*, 269 F.3d 159, 162 (2d Cir. 2001) ("The consumer's right to take the position, at least initially, that the debt is disputed does not depend on whether the consumer has a valid reason not to pay.").

[9] A factfinder may consider Mr. Brown's expertise with the FCRA, his basic knowledge of the FDCPA, and the fact that Mr. Brown had several opportunities to obtain verification of his debt. A jury may determine that this evidence undermines the credibility of Mr. Brown's testimony.

not dispute the debt until after employing a credit advisor for assistance concerning his dispute rights."   The Court denies SRA's motion for summary judgment attacking Mr. Brown's allegation that he "misunderstood his right to dispute the debt" and needed to consult an advisor for assistance.   The Court asks the Clerk to please TERM Doc. 71.

      **DONE** and **ORDERED** this March 31, 2022.

                                   _____

                                   **MADELINE HUGHES HAIKALA**
                                   UNITED STATES DISTRICT JUDGE